IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEWEY M. MOORE, JR., | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:19-CV-2601-L-BK |
| | § | |
| INSTITUTE FOR WEALTH ADVISORS, | § | |
| INC., INSTITUTE FOR WEALTH | § | |
| MANAGEMENT, LLC, INSTITUTE FOR | § | |
| WEALTH HOLDINGS, INC., and | § | |
| MATTHEW D. MEDEIROS, | § | |
| DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's *Order of Reference*, Doc. 11,

Defendant Matthew D. Medeiros' *Rule 12(b)(2) Motion to Dismiss*, Doc. 4, is before the Court

for findings and a recommended disposition.  As stated here, the motion should be **GRANTED**.

I.  BACKGROUND

Plaintiff filed his *Original Petition* in state court in September 2019 against Defendants,

with whom he was last employed as Chairman and CEO of Institute for Wealth Holdings, Inc.

("IWH").  Doc 1-1 at 12-13.  Plaintiff's allegations against Defendant Matthew D. Medeiros

("Medeiros"), the current President and CEO of IWH, are defamation per se, business

disparagement, and tortious interference with an employment contract.  Doc. 1-1 at 13, 19-21.

Plaintiff contends that following his resignation, "Defendants" filed an "amended U5" for

Plaintiff that contained allegedly false information, which caused Plaintiff to lose his new job.[1]

---

[1] Form U5 is the Uniform Termination Notice for Securities Industry Registration for self-regulatory organizations.  A Form U5 must be submitted within 30 days of a registered

Doc 1-1 at 17-19. Defendants timely removed the case to this Court based on diversity

jurisdiction. Doc. 1 at 2. Medeiros, who resides in Colorado, now moves to dismiss the case

against him for lack of personal jurisdiction. Doc. 4 at 1.

## II. APPLICABLE LAW

Personal jurisdiction is "an essential element" of district court jurisdiction, "without

which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*,

526 U.S. 574, 584 (1999) (internal quotation marks omitted). To exercise personal jurisdiction

over a non-resident defendant in Texas, the court must determine whether jurisdiction is

authorized under the state's long-arm statute and if the exercise of jurisdiction would comport

with the Due Process Clause of the Fourteenth Amendment. *Panda Brandywine Corp. v.*

*Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001). The Texas long-arm statute

authorizes the exercise of personal jurisdiction to the extent allowed by federal constitutional

law. *Id.* Thus, to determine whether it has personal jurisdiction, the court need only consider

whether its exercise of jurisdiction would comport with federal due process requirements.

In determining whether the exercise of specific personal jurisdiction[2] comports with

federal due process, a court considers "(1) whether the defendant has minimum contacts with the

forum state. . .; (2) whether the plaintiff's cause of action arises out of or results from the

defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair

and reasonable." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006).

---

representative leaving a firm. https://www.finra.org/registration-exams-ce/individuals/terminate
(last visited Aug. 3, 2020).

[2] Because Plaintiff only asserts that Medeiros is subject to specific personal jurisdiction, this
Court will not address general jurisdiction. *See* Doc. 8 at 3.

As to the first prong, a non-resident defendant establishes minimum contacts with the

forum state by (1) purposely availing himself of the benefits of conducting activities in the forum

state[3]; or (2) purposely directing his activities at the forum state such that he "should reasonably

anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472,

474-76 (1985) (quotation omitted). Parties who deliberately engage in significant activities

within the forum state are subject to suit in the forum state for the consequences of their

activities. *Id.* at 475-76 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)).

The second prong of the analysis is whether the plaintiff's cause of action arises out of or

results from the defendant's forum-related contacts. To satisfy this prong, the defendant's "suit-

related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571

U.S. 277, 284 (2014). Thus, the court must look to the defendant's conduct to see if he made

contacts with the forum state itself and not just with persons who reside there. *Id.* at 284-86. For

an "out-of-state intentional tortfeasor," the exercise of jurisdiction "must be based on intentional

conduct" that created "the necessary contacts with the forum." *Id.* at 286.

Once the plaintiff establishes the first two prongs, the burden "shifts to the defendant to

defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472

F.3d at 271. This requires a showing that the exercise of personal jurisdiction over the

nonresident would not be consistent with "traditional notions of fair play and substantial justice."

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In considering that factor, a

court must weigh (1) the burden on the defendant; (2) the forum state's interest in adjudicating

the dispute; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's

---

[3] The first element applies to contract claims, so the Court will focus on the second element and
its application to the intentional tort claims at issue here. *See Trois v. Apple Tree Auction
Center, Inc.*, 882 F.3d 485, 489-90 (5th Cir. 2018).

interest in obtaining the most efficient resolution of controversies; and (5) the interest of the

states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Super. Ct.*

*of Cal.*, 480 U.S. 102, 113 (1987) (quotations omitted).

Where, as here, a non-resident defendant challenges personal jurisdiction with a motion

filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff need only

present *prima facie* evidence to support his burden of demonstrating facts sufficient to support

jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Proof by a preponderance of the

evidence is thus not required. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir.

1999). To that end, the "court must accept the plaintiff's 'uncontroverted allegations and resolve

in [his] favor all conflicts between the facts contained in the parties' affidavits and other

documentation.'" *Id.* (quotation omitted). In considering a Rule 12(b)(2) motion, the court "may

consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized

discovery methods." *Id.* (quotation omitted). Nevertheless, a court need not credit conclusory

allegations even if they are uncontroverted. *Panda Brandywine Corp.*, 253 F.3d at 868-69.

### III. ANALYSIS[4]

Medeiros alleges that he does not have the requisite contacts with Texas to subject him to

this Court's jurisdiction and doing so would violate due process. Doc. 4. at 3-4, 6-7. Plaintiff

alleges that Medeiros has sufficient contacts with Texas through his role as President and CEO

of Defendant IWH, the parent company of Defendants Institute for Wealth Advisors, Inc.

---

[4] Specific personal jurisdiction is a claim-specific inquiry. *See Seiferth*, 472 F.3d at 274
("A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant
must establish specific jurisdiction for each claim."). With all of the claims against Medeiros
arising out of the same alleged forum contact of filing the Form U5, it is unnecessary for the
Court to assess each claim separately. *See* Doc. 1-1 at 19-22.

("IWA") and Institute for Wealth Management, LLC ("IWM"), both of which did business in

Dallas during the relevant time frame.  Doc. 8 at 1, 3.

The first relevant inquiry is whether Plaintiff presented *prima facie* evidence

demonstrating that Medeiros established minimum contacts with Texas.  *Seiferth*, 472 F.3d at

271.  The Court readily concludes that Plaintiff has met that burden.  Medeiros avers in his

Declaration that when "[Plaintiff] worked for IWH and/or IWA[,] his office was located . . . in

Dallas."  Doc. 5 at 4.  Medeiros further states, "[o]ther than occasional personal trips to Texas for

things like visits with friends or vacation, which have averaged less than one per year for the past

ten years, all my trips to and contacts with Texas for the last ten years have been in connection

with the performance of my duties and responsibilities for IWH and/or IWA and/or IWM, and/or

my position with other companies that are affiliated with them."  Doc. 5 at 4 (Medeiros Decl.).

Also, as Plaintiff points out, Texas law shows that Medeiros was "doing business" in Texas.  *See*

Doc. 8 at 4; TEX. CIV. PRAC. & REM. CODE § 17.042(2) ("a nonresident does business in this

state if the nonresident . . . commits a tort in whole or in part in this state.").  In Medeiros'

response to Plaintiff's reply, Medeiros argues that Plaintiff "has offered no evidence" of his

jurisdictional allegations, Doc. 10 at 3, but this Court does not find that argument persuasive

since Plaintiff relies on Medeiros' own admissions.  *See* Doc. 8 at 3.

The second inquiry is whether the plaintiff's cause of action arises out of or results from

the defendant's forum-related contacts.  *Seiferth*, 472 F.3d at 271.  Plaintiff alleges that

"Defendants" filed the amended Form U5 that caused him to lose his new job.  Doc 1-1 at 17-22,

*passim*.  Plaintiff's allegations regarding the Form U5 make no mention of Medeiros' individual

involvement.  Doc. 1-1 at 16-19.  Moreover, Medeiros avers that he was not involved in filing

the document.  *See* Doc. 5 at 4 (Medeiros Decl.) ("I did not file the Amended U5 that is

referenced in Plaintiff's Original Petition . . . It was signed by Armin Sarabi, Chief Compliance Officer and General Counsel, who was responsible for such filings on behalf of IWA.  I did not direct IWA to file the Amended U5.").  As such, Plaintiff has failed to present *prima facie* evidence showing that the causes of action at issue arise from Medeiros' forum-related contacts.

The final inquiry is whether this Court's exercise of personal jurisdiction over Medeiros would be reasonable and comport with "fair play and substantial justice."  *Asahi Metal Indus. Co.*, 480 U.S. at 113.  Medeiros claims that this Court's exercise of jurisdiction over him would indeed "offend traditional notions of fair play and substantial justice in violation of due process." Doc. 4 at 7.  He, however, alleges no actual hardships in either his motion to dismiss, Doc. 4, or his reply to the Plaintiff's response.  Doc. 10.  With the burden shifted to Medeiros to show that personal jurisdiction would be unfair or unreasonable, this Court finds no evidence that subjecting Medeiros to this Court's jurisdiction would violate the notions of fair play and substantial justice.  *Asahi Metal Indus. Co.*, 480 U.S. at 113

In summary, this Court finds that Plaintiff presented *prima facie* evidence that Medeiros established minimum contacts with Texas, and Medeiros did not satisfy his burden of demonstrating that the exercise of personal jurisdiction in this case would violate due process. *Id.*  Nevertheless, Plaintiff did not sufficiently allege facts to establish that his causes of action against Medeiros arose out of the latter's forum-related contacts.  *Walden*, 571 U.S. at 286.  As such, this Court does not have personal jurisdiction over Medeiros.

6

## IV. CONCLUSION

For the foregoing reasons, *Defendant Matthew D. Medeiros' Rule 12(b)(2) Motion to Dismiss*, Doc. 4, should be **GRANTED.**

**SO RECOMMENDED** on August 3, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(B). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United States Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).