IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DEWEY M. MOORE, JR.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-CV-2601-L** |
| | § | |
| **INSTITUTE OF WEALTH ADVISORS, INC., INSTITUTE FOR WEALTH MANAGEMENT, LLC; and INSTITUTE FOR WEALTH HOLDINGS, INC.,** | § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss Based on Settlement or to Extend Pleading Deadlines and Order Mediation ("Motion") (Doc. 22), which was filed October 25, 2021, and is opposed by Plaintiff. Also before the court is Plaintiff's Motion for Partial Summary Judgment (Doc. 44) in which he seeks dismissal of all counterclaims by Defendants in this action. For the reasons that follow, the court determines that the parties' settlement agreement is binding and enforceable. The court, therefore, **grants** Defendants' Motion to Dismiss Based on Settlement (Doc. 22); **dismisses with prejudice** this action and all claims, defenses, and counterclaims asserted by the parties in light of their settlement agreement; **denies as moot** the alternative relief requested by Defendants (Doc. 22); and **denies as moot** Plaintiff's Motion for Partial Summary Judgment (Doc. 44).

### I.     Factual and Procedural Background

Plaintiff Dewey M. Moore, Jr. ("Plaintiff" or "Mr. Moore") initiated this action against Defendants Institute for Wealth Holdings, Inc. ("IWH"); Institute for Wealth Advisors, Inc.

("IWA"); and Institute for Wealth Management, LLC ("IWM") (collectively, "Defendants") on September 26, 2019, alleging causes of action for breach of contract and various torts, including defamation, arising out of his employment contract with IWH, his resignation as the director of IWH in October 2018, and his resignation in December 2019 from the board of directors of IWH and IWA. Mr. Moore alleges that, after he resigned, he was unable to find employment because IWA filed U-5 and Amended U-5 forms[1] that included allegedly false statements regarding the nature of his resignation (that he was "permitted to resign" or was terminated as a result of his voluntary resignation); that a customer complaint had been lodged against him; and that the SEC was investigating him for breach of fiduciary duty. Mr. Moore believes that IWM's management filed the Amended U-5 in retaliation for his efforts to obtain legal recourse for the damages that he contends he sustained as a result of the wrongful conduct of Defendants, and in particular IWH and IWH's management.

Settlement discussions between the parties commenced on approximately August 4, 2021, with the goal of reaching a settlement by August 12, 2021, but the discussions continued until August 13, 2021. On the morning of August 13, 2021, counsel for Defendants, Daniel P. Callahan, e-mailed Plaintiff's attorney, Stephen Kennedy, and advised:

> I have been authorized to extend this offer of settlement. Given the time constraints, **acceptance of this offer would authorize the filing of the amended U5 described below, and the essential terms of this agreement would be binding upon such filing, even if, the parties have unexpected difficulty agreeing to the terms of more formal documentation**. Please let me know whether your client accepts or rejects this offer.

---

[1] The Form U-5 is the "Uniform Termination Notice for Securities Industry Registration" that broker-dealers, investment advisers, or issuers of securities must use to report a variety of information in appropriate jurisdictions or self-regulatory organizations, including the termination of the registration of an individual. A Form U-5 must be submitted within 30 days of a registered representative leaving a firm. *Moore v. Institute for Wealth Advisors, Inc.*, No. 3:19-CV-2601-L-BK, 2020 WL 6576166, at *1 (N.D. Tex. Aug. 3, 2020), *report and recommendation adopted*, No. 3:19-CV-2601-L, 2020 WL 4877588 (N.D. Tex. Aug. 19, 2020).

**Memorandum Opinion and Order – Page 2**

Defs.' App. 4. (emphasis added). Mr. Callahan's August 13, 2021 e-mail goes on to state in pertinent part as follows regarding the proposed terms of the parties' agreement to settle this action:

> We [Defendants] can addend the U[-]5 as follows:
>
>> in part 3
>>
>>> Reason for Termination: *Voluntary*
>>>
>>> If amending reason for termination, explain
>>>
>>>> The June 20, 2019 amended Form U-5 for Mr. Moore was prepared and filed by a former employee while the CEO was temporarily incapacitated due to an auto accident. Later, Mr. Moore filed a defamation lawsuit challenging the veracity of the allegations included in the amendment. Following further investigation, the CEO was unable to adequately substantiate the alleged facts and/or the former employee's interpretation thereof, making further amendment appropriate.
>>
>> Part 7
>>
>>> []A. . . . Currently is, or at termination was, the individual the subject of an investigation . . .
>>>
>>>> *No*
>>>
>>> []B. . . . Currently is, or at termination was, the individual under internal investigation for fraud . . .
>>>
>>>> *No*
>>>
>>> We cannot change the answer to 7(E)(3).
>
> I [Mr. Callahan] have "cut and pasted" from your [Mr. Kennedy's] e[-]mail to me dated August 4 and address those topics below in *italics*.
>
>> **Plaintiff will dismiss the claims in Case No. 3:19-cv-02601-L with prejudice in return for the following terms**:
>>
>>> (1) On or before August 12, 2021, Defendants will agree to amend Mr. Moore's U-5 to remove the following statements:

> *We will file an amended U[-]5 today as described in this email if this offer is accepted; (a)-(c) are addressed above*.
>
> > (a) that Moore was "permitted to resign";
> >
> > (b) that Moore was ever the subject of an SEC investigation;
> >
> > (c) that Moore was the subject of a customer complaint;
>
> (2) Defendants agree not to insert any new adverse information in the second amended U-5; *Agreed <span style="color:red">unless required to by SEC or FINRA[;]</span>*
>
> (3) Defendants agree not to further amend Moore's U-5 thereafter: *Agreed*
>
> (4) Defendants ~~will jointly file~~ *will not oppose* a motion filed by Moore asking that the Court expunge the first amended U-5 filed which is the subject of the litigation *provided the motion does not make inflammatory statements about any Defendant*;
>
> (5) **Mutual releases of the claims and counterclaims asserted in the litigation by all parties.** *Agreed*; *mutual releases must also include ones between Moore and Medeiros*.

*Id.* at 4-6 (cleaned up and emphasis added).

The August 12, 2021 deadline was initially included in the e-mail from Plaintiff's counsel to Defendants' counsel on August 4, 2021. Except for the red font language in paragraph 2 ("*unless required to by SEC or FINRA*"), all italicized language was included by Defendants. It is unclear which party initially proposed the language in paragraph 4 that a joint motion to expunge be filed. Mr. Moore contends that this language was proposed by Defendants; however, he appears to take conflicting positions in his response to Defendants' Motion as to whether the parties agreed to "jointly file" a motion to expunge. On one hand, he argues:

> The defense even modified the language of the term as explained above. They added the words "jointly file" and the words "provided the motion does not make inflammatory statements about any Defendant." Thus, having required that the language be changed as part of the negotiation, Defendants are hardly in a position to deny the term was ever part of the agreement[.] . . . Through their motion,

**Memorandum Opinion and Order – Page 4**

> Defendants ask the Court to dismiss this action altogether. They do not even mention the term that allows Plaintiff the opportunity to "jointly file" a motion to expunge the false U5.

Pl.'s Resp. 4. On the other hand, Plaintiff acknowledges a number of times in his response to Defendants' Motion that the "jointly file" language was amended to require only that that Defendants "will not oppose" any such motion filed by Plaintiff, as long as the motion does not include disparaging remarks about Defendants. *See, e.g.*, Pl.'s Resp. 3 (stating that the August 13, 2021 e-mails "reflect[] that the parties agreed that Defendants would 'not oppose a motion filed by Moore asking that the Court expunge the first amended U-5 . . . provided the motion does not make inflammatory statements about any Defendant'"). Regardless, it is clear from the parties' e-mails, and Mr. Moore agrees, that the "jointly file" language was stricken and amended to say that Defendants will not oppose any such motion filed by Plaintiff. *See id.* at 6.

A short time later on August 13, 2021, Mr. Kennedy responded: "Thank you for your efforts. I sent this to Mr. Moore . . . **Is it possible for your office to draft a Rule 11 agreement of counsel that confirms the terms [of the] deal?** Renee [Culp] will have authority to sign once we get [Mr.] Moore'[s] . . . approval (I am optimistic so let's work to that end)." *Id.* at 3 (emphasis added). At 1:17 p.m., Mr. Callahan e-mailed Mr. Kennedy and Ms. Culp, asking: "Where are we? I am told our compliance person is in the eastern time zone, time is running short." *Id.* at 2.

After discussing the matter over the telephone, Mr. Callahan again e-mailed Mr. Kennedy on August 13, 2021, to confirm that the parties had reached an agreement and to memorialize additional terms agreed to during their telephone call:

> **Per our last phone call, we have reached an agreement and I have sent instructions to get the U[-]5 filed as soon as possible**.
>
> This will confirm our conversation that (i) the settlement will include mutual nondisparagement clauses, (ii) the settlement does not provide for the conveyance of any property (e.g. stock), (iii) I have instructed my clients to stop

>   using any credit card guaranteed by Mr. Moore and/or get him removed as guarantor [they may need some cooperation from him, I don't know], and (iv) the SEC matter referenced in earlier U[-]5 has been concluded.
>
>   Do you want to draft the more formal document, or have us take a stab at it?

*Id.* at 2 (emphasis added). To this, Mr. Kennedy responded by e-mail at 2:13 p.m.: "**Confirmed**. Thank you Dan. We would appreciate it if you wrote the first draft." *Id.* (emphasis added). Later that evening, Matthew Medeiros, the CEO of IWA, e-mailed FINRA requesting to amend the June 20, 2019 U-5 disclosures to state that: (1) Mr. Moore's termination was "voluntary"; and (2) he is and was not the subject of any investigation or internal review for fraud. Defs.' App. 8-10.

Approximately two months later, Defendants moved to enforce the settlement agreement and to dismiss all claims in this action in accordance with the parties' agreement. As indicated, Mr. Moore opposes Defendants' Motion. As discussed herein more fully, Mr. Moore contends that enforcement of the settlement agreement and dismissal of all claims and this action is premature because any agreement to settle was conditioned on his filing a motion to expunge the U-5, as well as the occurrence of other matters that he asserts must be done before he can file a motion to expunge. He also contends that Defendants may have violated the settlement agreement, and that he, therefore, needs discovery.

The court disagrees with Plaintiff's contentions and determines that the parties' settlement agreement is valid and enforceable, and enforcement of the parties' agreement to dismiss with prejudice all claims against each other is not contingent on any other matter. Defendants are, therefore, entitled to enforce the settlement agreement and obtain dismissal with prejudice of this action and all claims asserted by the parties. The court's determination in this regard also moots the other relief sought by the parties.

## II.     Defendants' Request to Enforce Settlement

In their Motion, Defendants contend that the court should dismiss with prejudice this action in light of the settlement reached by the parties in August 2021, which they argue is enforceable against Plaintiff. For support, Defendants submitted copies of the above referenced e-mail correspondence exchanged by counsel for the parties on August 13, 2021.  Defendants contend that this correspondence clearly establishes the formation of a binding agreement to settle the claims asserted in this lawsuit under Texas law.  In addition, to show that they complied with their end of the bargain in accordance with the settlement agreement, Defendants submitted the declaration of Matthew Medeiros, the CEO of IWA, and a copy of the e-mail he sent to FINRA on August 13, 2021, to amend the June 20, 2019 U-5 disclosures.  If the court denies their request to enforce the settlement agreement, Defendants alternatively request that the court order the parties to mediate as soon as possible and extend unexpired case deadlines in the interim.

Mr. Moore acknowledges that he authorized his attorney to initiate settlement discussions with Defendants' counsel, and that the parties exchanged e-mails and telephone calls in August 2021 to that effect. He also agrees that there was some urgency at the time because he was facing the possibility of losing his SEC licenses and ability to obtain employment if the parties were unable to reach agreement by the end of August 2021 to dismiss the claims in this action in exchange for Defendants amending his U-5 to remove the three disclosures asserted by him to be false.

Mr. Moore contends that settlement was conditioned on both amendment of his U-5 *and* Defendants' agreement to not oppose a motion by him to expunge the first amended U-5 that prompted the filing of this lawsuit, but "the final settlement terms proposed by Defendants do not include language" regarding Defendants' agreement to not oppose a motion to expunge the first

amended U-5. Pl.'s Resp. 4. According to Mr. Moore, Defendants originally agreed to this condition and "knew that this term was a required condition to completion of the settlement," but they subsequently omitted it from the "formal settlement document." *Id.* Mr. Moore further asserts that Defendants' Motion should be denied because they no longer agree to satisfy this condition or do what he contends is required to satisfy it:

> To procedurally assert the motion to expunge, Plaintiff must first file a motion with the Court to amend the complaint and add necessary parties, including FINRA. Upon getting approval from the Court to proceed, FINRA [Financial Industry Regulatory Authority] would need to appear and answer. One or two depositions may be necessary to demonstrate the validity of the relief to be requested. After getting the basic discovery required to support the motion, Plaintiffs would be in a position to file a substantive Motion for Judgment to Expunge the U[-]5.
>
> Defendants no longer wish to satisfy th[is] condition precedent. Through their motion, Defendants ask the Court to dismiss this action altogether. They do not even mention the term that allows Plaintiff the opportunity to "jointly file" a motion to expunge the false U[-]5. In an effort to work-around that problem, counsel for Plaintiff[] requested that Defendants instead simply amend the U[-]5 to remove the "customer complaint." Defendants will not agree to this option. Accordingly, Defendants have no other option but to comply with the terms of the proposed agreement and allow Plaintiff the opportunity to procedurally and substantively present to this Court a competent motion to expunge the record.
>
> As demonstrated in the attached Appendix, Plaintiffs have asked on two occasions for discovery that will allow the Plaintiffs to proceed with the Motion to Expunge. The defense will not agree to move forward.
>
> The parties anticipated a motion to expunge the U[-]5 by this Court. That Motion requires certain procedures to be followed. Defendants have refused to cooperate and ask the Court to dismiss this action altogether, and in so doing, ask the Court to re-write the terms of the settlement in a way that will prevent Plaintiff from filing a motion to expunge the U[-]5 in this case. The Court should decline that opportunity.

Pl.'s Resp. 4-5 (footnote omitted).

To support his contention that Defendants have not agreed to move forward, Plaintiff relies on e-mails that counsel for the parties exchanged on November 2 and 15, 2021, after Defendants

filed their Motion. The first of these e-mails was initiated by Plaintiff's counsel who stated that Mr. Moore authorized him to seek a stay of Defendants' Motion to take two depositions, which he believed was "needed" or necessary because:

> we have reason to believe that Mr. Medeiros and/or Mr. Hollingsworth intentionally took certain actions to harm Mr. Moore after we reached a preliminary deal on settlement. We believe those actions were taken with the express intent of interfering with Mr. Moore's new employment. If your client has nothing to hide, your client should have no opposition to the relief we are requesting.

Pl.'s Resp. App. 1 (24-1).[2]

To this, defense counsel responded: "[I]t is our position the case has settled and discovery is therefore not warranted. You can put me down as opposed to your motion and to any delay in considering our pending motion." *Id.* at 3. In an unsuccessful final effort to persuade defense counsel to agree to the two depositions, Plaintiff's attorney sent another e-mail to broach the issue again as follows:

> Before we file our Response, I would like to give you a second chance to reconsider our request below. To substantiate the motion to expunge the false U[-]5, we need two limited depositions, including a deposition of Mr. Medeiros and Mr. Hollingsworth. We are also entitled to know whether either of these individuals took any action after the proposed settlement that are in contradiction to the terms of the agreement, i.e., the non-disparagement.

*Id.* at 2. When this failed, Plaintiff filed his response to Defendants' Motion on November 15, 2021, to which Defendants replied.

    A.    **Law Applicable to Enforcement of Settlement Agreements**

A "district court has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). That one party to a suit initially agrees to a settlement but later refuses to execute a formal

---

[2] The pages of Plaintiff's appendix are not numbered as required by this District's Local Civil Rules. The court, therefore, cites to electronic page numbers at the top of each page.

**Memorandum Opinion and Order – Page 9**

agreement that recites the terms of the settlement does not preclude a district court from exercising such discretion to enforce a settlement agreement. *See, e.g., Daftary v. Metropolitan Life Ins. Co.*, 136 F.3d 137, 1998 WL 30059, at *1 (5th Cir. Jan. 12, 1998) (per curiam). Further, the issue of whether such withdrawal by one party is allowed under Texas law is irrelevant to whether a settlement is enforceable. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 268 (5th Cir. 1995) (citation omitted). Unless the party seeking to withdraw can demonstrate that the agreement is invalid under state law at the time it was made or differs materially from any judgment entered enforcing the agreement, "a federal court may hold them to their word by incorporating the terms of their agreement into a final judgment." *Id.*

"Although federal courts possess the inherent power to enforce agreements entered into in settlement of litigation, the construction and enforcement of settlement agreements [in cases that do not involve federal claims] is governed by the principles of state law applicable to contracts generally[.]" *Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014) (quoting *Energy, Inc. v. Unico Oil & Gas, Inc.*, 861 F.2d 1379, 1380 (5th Cir. 1988)). A federal court sitting in diversity applies the law of the forum state when deciding whether to enforce a settlement agreement. *See Cavallini*, 44 F.3d at 266 (citations omitted). Texas law and Texas Rule of Civil Procedure 11 applicable to settlement agreements, therefore, applies to the issue in this case of whether the parties' Rule 11 settlement agreement is enforceable against Mr. Moore. *See id.* ("We apply Texas law to the enforcement of settlement agreements in Texas diversity cases," . . . and it is undisputed that Texas Rule of Civil Procedure 11 controls.").

Rule 11 states: "Unless otherwise provided in these rules, no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, *or* unless it be made in open court and entered of record." Tex. R.

Civ. P. 11 (emphasis added); *Estate of Martineau v. ARCO Chem. Co*., 203 F.3d 904, 910 (5th Cir. 2000) (setting forth Rule 11 requirements). "Rule 11 is a minimum requirement for enforcement of all agreements concerning pending suits." *Cavallini*, 44 F.3d at 266 (citing *Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984)). The rule "contemplates that something *more* is required for the enforcement of such an agreement than that it be a valid contract. That something more is its reduction to writing and signature, or their substantial equivalents." *Cavallini*, 44 F.3d at 266 (citation omitted).

The purpose of Rule 11 is to forestall the "misunderstandings and controversies" that often attend oral agreements between counsel. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995) (citation omitted). Because no settlement in this case was made in open court, the parties' agreement must have been "in writing, signed and filed with the papers as part of the record" to be enforceable under Rule 11. Tex. R. Civ. P. 11; *Estate of Martineau*, 203 F.3d at 910. "[S]lavish adherence to the literal language of the rule," however, is not necessary. *Kennedy v. Hyde*, 682 S.W.2d 525, 529 (Tex. 1984) (identifying various exceptions to Rule 11) (citation and internal quotation marks omitted).

**B.     Discussion**

The court determines that the e-mails exchanged by the parties' attorneys on August 13, 2021, gave rise to a binding settlement agreement under Rule 11. It is clear from these e-mails that agreement was reached as to all material terms, notwithstanding Plaintiff's attempt now to withdraw from that agreement or characterize the agreement as a "proposed settlement" or "preliminary agreement" that is contingent on the occurrence of other events. Pl.'s Resp. App. 1-2.

        **1.      The Agreement to Mutually Release All Claims is in Writing, Contains All Essential Elements, and is Not Contingent on Any Other Matter.**

A series of e-mails such as those exchanged by the parties' counsel in this case has been held to satisfy Rule 11's "in writing" requirement. *Green v. Midland Mortg. Co.*, 342 S.W.3d 686, 691 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also Williamson v. Bank of New York Mellon*, 947 F. Supp. 2d 704, 708-09 (N.D. Tex. 2013) (predicting that the Texas Supreme Court would hold that a series of e-mails satisfies Rule 11's "in writing" requirement, including e-mails exchanged by agents or attorneys of the parties) (citations omitted).

Moreover, the series of e-mails in this case is "complete within itself in every material detail" and "contains all of the essential elements of the agreement." *Padilla*, 907 S.W.2d at 460. Specifically, counsels' e-mails establish that Plaintiff agreed to dismiss with prejudice all claims against Defendants in this action in exchange for their promise to file an amended U-5. The parties also agreed to other terms, but these terms were of utmost significance to the parties when they negotiated the terms of the agreement because Mr. Moore was facing the possibility of losing his SEC licenses and ability to obtain employment if the parties were unable to reach agreement and amend the U-5 by the end of August 2021. Defs.' App. 5 ("Plaintiff will dismiss the claims in Case No. 3:19-cv-02601-L with prejudice in return for the following terms," including Defendants' agreement to amend the U-5 as discussed).

Plaintiff's contention that Defendants allegedly refused after-the-fact to include all terms in a formal document, including the language regarding his filing a motion to expunge does not preclude enforcement of their agreement as set forth in the August 13, 2021 written correspondence. *See, e.g., Daftary*, 136 F.3d 137, 1998 WL 30059, at *1. Likewise, Plaintiff's suspicion that Defendants may have breached the agreement after-the-fact by violating the non-

disparagement provision is also insufficient to preclude enforcement of the settlement agreement. At most, this might give him a cause of action for breach of contract, but it is not a reason recognized under Texas law to set aside the agreement or not enforce the agreement. *See Cavallini*, 44 F.3d at 268. Thus, the court need not decide this issue to enforce the settlement agreement.

The court also disagrees with Plaintiff's contention that "it is clear" from the inclusion of language in the parties' agreement—that Defendants would not oppose Plaintiff filing a motion to expunge—that the parties also "contemplated that the settlement was *contingent* on an unopposed motion that would be filed in this Court by [him]." Pl.'s Resp. 4 (emphasis added). As Defendants correctly note, Plaintiff's argument that his filing a motion to expunge is a condition precedent to enforcement of the settlement agreement is not supported by the language in the agreement or Texas law.

"[A] 'condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation,' and 'if an express condition is not satisfied, then the party whose performance is conditioned is excused from any obligation to perform.'" *James Constr. Grp., LLC v. Westlake Chem. Corp*., —S.W.3d—No. 20-0079, 2022 WL 1594955, at *16 (Tex. May 20, 2022) (quoting *Solar Applications Eng'r, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010)); *Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 488 (5th Cir. 2007). "[T]o determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." *Solar Applications Eng'r, Inc.*, 327 S.W.3d at 109; *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). Generally, terms such as "if," "provided that," "on condition that," or similar language must be used in the contract to support finding a condition precedent. *Id.* "When no conditional language is used and another reasonable interpretation of the contract is possible, the terms will be

construed as a covenant . . . to prevent a forfeiture." *Solar Applications Eng'r, Inc.*, 327 S.W.3d at 109 (citation and internal quotation marks omitted); *Criswell*, 792 S.W.2d at 948. "When the intent of the parties is doubtful or when a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition [precedent]." *Id.* Because of their harshness in operation, conditions precedent are generally not read into contracts. *Id.*

"A covenant, as distinguished from a condition precedent, is an agreement to act or refrain from acting in a certain way." *Solar Applications Eng'r, Inc*., 327 S.W.3d at 108. In every contract, "there exists an implied promise that a party will not do anything to prevent or delay the other party from performing the contract." *Texas Nat'l Bank v. Sandia Mortg. Corp*., 872 F.2d 692, 699 (5th Cir. 1989). "A breached covenant gives rise to a cause of action for damages." *James Constr. Grp., LLC*, 2022 WL 1594955, at *16 (citing *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc*., 518 S.W.3d 432, 436 (Tex. 2017)).

Here, the parties' agreement provided in pertinent part that "Plaintiff will dismiss the claims in Case No. 3:19-cv-02601-L with prejudice in return for the following terms:" (1) "Defendants will agree to amend Mr. Moore's U-5" in accordance with the agreement; (2) "Defendants agree not to insert any new adverse information in the second amended U-5"; (3) "Defendants agree not to further amend Moore's U-5 thereafter"; (4) "Defendants *will not oppose* a motion filed by Moore asking that the Court expunge the first amended U-5" as long as the motion does not disparage any Defendant; and (5) "Mutual releases of the claims and counterclaims asserted in the litigation by all parties." Defs.' App. 5-6. Neither this nor any other portion of the parties' agreement contains the kind of conditional language that would support Plaintiff's argument and interpretation that Defendants' agreement to not oppose a motion to

expunge filed by Plaintiff is a condition precedent to enforcement of the settlement and the parties' agreement to mutually release and dismiss all claims against each other in this action. *See Criswell*, 792 S.W.2d at 948. Because this provision merely requires Defendants to refrain from opposing such a motion by Plaintiff, it is at most a covenant that would allow Plaintiff to sue for breach of the covenant if breached by Defendants, and Plaintiff suffered damages as a result. *See Solar Applications Eng'r, Inc.*, 327 S.W.3d at 108.

Moreover, Plaintiff's contention that this provision was intended as a condition to settlement would lead to the absurd and untenable result of allowing him to indefinitely withhold his own performance in dismissing with prejudice all claims in this action against Defendants until after he decided to file a motion to expunge at some unspecified point in the future. *See id.* at 109. According to Plaintiff's interpretation, this would be the result even if Defendants performed as promised or Plaintiff was not satisfied that Defendants had performed in other respects as promised. Such open-ended and discretionary performance by Plaintiff is not supported by the plain language of the parties' agreement, which merely required Defendants to agree to certain terms in exchange for Plaintiff's promise to dismiss with prejudice all claims in this action against Defendants.

While the parties' settlement agreement contemplated that Plaintiff would file a motion to expunge, and that Defendants would not oppose such a filing, nothing in their agreement suggests that mutual release and dismissal of all claims between them was contingent upon the happening of some event or condition in the future such as the filing of a motion to expunge or discovery by Plaintiff to determine whether Defendants have performed as promised and to his satisfaction. In other words, there is no language "to the effect that a party's future acceptance of the other's performance is necessary to [Mr. Moore's] 'satisfaction,' nor is the effect of any release and

discharge made contingent on any other matter whatsoever." *Priem v. Shires*, 697 S.W.2d 860, 864-65 (Tex. App.—Austin 1985, no writ).

Instead, Plaintiff's *promise* to dismiss with prejudice all claims against Defendants was made in exchange for Defendants' *promise* to perform as agreed with respect to amendment of the U-5 and mutual release, and their *promise* to refrain from acting by not opposing a motion to expunge by Plaintiff. These mutual promises and the mutual release language in the agreement show that the parties intended to fully and finally resolve all claims between them based merely on their mutual promises of performance. *See id.* at 863-65. As explained by the court in *Priem*:

> [D]isputing parties may in lieu of performance itself agree that a **promise of performance** shall constitute satisfaction of an original claim or right of action. That is to say, their contract may evidence an intention to relinquish and extinguish pre-existing claims and rights of action, and effect a novation, even though some of the promises contained in their contract be executory.

*Id.* at 863-64 (footnote and citations omitted, emphasis added). As a result, Plaintiff cannot avoid enforcement of the parties' settlement agreement and is limited to recovering on or for any breach of the promises contained in that agreement unless he can establish the invalidity of the agreement under Texas law, which he has not done in response to Defendants' Motion. *See id*. at 863 & 865.

### 2.     The Agreement is Signed.

As to Rule 11's requirement that a writing be signed, the court in *Williamson v. Bank of New York Mellon*, 947 F. Supp. 2d 704 (N.D. Tex. 2013), determined that a name or e-mail address in the "from" field was sufficient to satisfy the signature requirement under Texas law because the "from" field functions to identify the sender of the e-mail and authenticate the e-mail. *Id.* at 708-09 (citing *Khoury v. Tomlinson*, 518 S.W.3d 568, 576 (Tex. App.—Houston [1st Dist.] 2017, no pet.)). Accordingly, because the "from" field functions to identify the sender of the e-mail and authenticate the e-mail, the court determines that the e-mail agreement between the parties was

signed by their counsel and satisfies Rule 11's signature requirement. *See id.*; *see also Green*, 342 S.W.3d at 691 (concluding that an attorney may execute an enforceable rule 11 agreement on a client's behalf).

### 3. The Agreement was Filed with the Court and is Part of the Record.

In support of its Motion to enforce the parties' settlement agreement, Defendants filed the parties' e-mail exchange. The court, therefore, determines that the parties' agreement as contained in this exchange is now part of the record in this case, as both federal and state courts in Texas have enforced agreements filed contemporaneously with motions seeking their enforcement. *See, e.g., Oliver v. Kroger Co.*, 872 F. Supp. 1545, 1549 (N.D. Tex. 1994); *Padilla*, 907 S.W.2d at 461. That Defendants filed the agreement despite Plaintiff's opposition and the parties dispute regarding the effect of the agreement's terms does not detract from such filing for purposes of Rule 11. *See id.* at 461. Thus, the agreement meets the third and final requirement of Rule 11.

## III. Conclusion

For the reasons explained, the court determines that the claims at issue in this lawsuit were settled by a valid, binding, enforceable Rule 11 agreement on August 13, 2021, pursuant to which the parties mutually agreed to dismiss with prejudice all claims between them in this action without regard to any motion to expunge that Plaintiff may file in the future in a subsequent proceeding. The court, therefore, **grants** Defendants' Motion to Dismiss Based on Settlement; **dismisses with prejudice** all claims asserted by Plaintiff against Defendants in this action; **dismisses with prejudice** all counterclaims asserted by Defendants against Plaintiff in this action; and **denies as moot** Defendants' alternative request for a mediation order and extension of case deadlines. Further, in light of the foregoing rulings, the court also **denies as moot** Plaintiff's Motion for

Partial Summary Judgment (Doc. 44), as granting Plaintiff's summary judgment motion would be inconsistent with the court's other rulings.

**It is so ordered** this 8th day of June, 2022.

_____
Sam A. Lindsay
United States District Judge